Upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the award, except for minor modifications, the Full Commission AFFIRMS and ADOPTS the Opinion and Award of the Deputy Commissioner as follows:
 ***********
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties in a Pre-Trial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. On or about December 17, 1995 the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act;
2. On said date, the employee-employer relationship existed between the plaintiff and the defendant-employer, Underwriters Laboratories, Inc.
3. The insurance carrier for defendant-employer was CNA Insurance Company.
4. The plaintiff sustained an injury to his left ankle on or about December 17, 1995.
5. The defendant-employer, Underwriters Laboratories, Inc. has paid the plaintiff's medical bills related to the ankle injury of December 17, 1995.
6. The parties stipulated to the following medical records: eight (8) pages from Raleigh Orthopaedic Clinic; twelve (12) pages from H.O.R.A.; and eighteen (18) pages from Park Occupational Medicine.
7. The issue before the Commission is whether or not the plaintiff sustained an injury by accident arising out of and in the course of his employment with the defendant-employer on or about December 17, 1995.
 ***********
Based upon all of the competent evidence from the record herein, the Full Commission adopts the findings of fact by the Deputy Commissioner with minor modifications as follows:
 FINDINGS OF FACT
1. On December 17, 1995, plaintiff was employed by defendant-employer, hereinafter referred to as "UL", as an engineer. On said date, plaintiff was a member of a group of "UL" employees who played basketball together as a team participating in the Cary Community League. Practices and games were held in the evenings outside work hours at the Cary Recreational Center.
2. On December 17, 1995, plaintiff sustained a sprained left ankle while playing as a member of the "UL" basketball team. He was subsequently treated at Park Occupational Health by Dr. Boone, an orthopedist, and referred for physical therapy at HORA. Thereafter, plaintiff reached maximum medical improvement and was assigned a 5% permanent partial disability rating to his left ankle by Dr. Boone on September 11, 1996 as a result of said injury. Following his injury, plaintiff returned to his regular work duties for defendant-employer "UL" and continues to perform his regular work duties at this time. He sustained no loss of earnings as a result of his injury and all of plaintiff's medical bills were paid by defendants.
3. Prior to December 17, 1995, Mr. Mike Lusk, a former co-employee of the plaintiff and the manager of the basketball team in 1995, approached Mr. Al Catrone, the general manager for "UL" about "UL" paying for the registration for the basketball team at the Cary League. Subsequently, "UL" agreed to pay the registration fee and Mr. Lusk "E-mailed" other employees regarding who would be interested in playing on the team.
4. Plaintiff responded and informed Mr. Lusk that he would like to play on the team. Plaintiff's desire to play on the basketball team was solely because of his personal interest. "UL" neither encouraged nor discouraged employees from participating on the basketball team. No supervisor or other management personnel ever asked plaintiff to join the team or advised plaintiff that his employment would be affected if he did not play on the team. There was no evidence to show that any of plaintiff's supervisors or other management personnel knew that plaintiff was a member of the basketball team. Additionally, plaintiff, himself, testified that he did not feel pressured to join the basketball team or feel that his employment would be adversely affected if he did not join the team.
5. Although "UL" paid the registration fee for the team to the Cary League, the company did not otherwise sponsor or finance participation on the basketball team. The only benefit that "UL" realized from the fact that some employees played basketball was the increased morale among the employees who played and possibly the good will of the community at large. The evidence presented at the hearing before the Deputy Commissioner demonstrated that employees regarded the opportunity to play on the basketball team as one for exercise and having a good time together and not as an employment right or benefit.
6. Although "UL" paid the registration fee for the team, the individual team members were responsible for their share of all other expenses associated with playing on the team. These expenses included mileage to and from games, as well as their uniforms. The basketballs were provided by the Cary League. "UL" did not provide any support other than paying the registration fee.
7. All games and practices took place after working hours and off "UL" premises. No evidence was presented to indicate that "UL" kept any record of employees who attended and played at the games. In fact, according to the testimony of Mr. Lusk, at times non-company employees played on the team when regular team members were unable to play or attend. "UL" employees were not paid or given any time off work for the time they spent playing basketball. Furthermore, no evidence was presented to indicate that employees who did not play basketball were required to work extra hours for not participating on the basketball team. The evidence supports a finding that participation on the team was entirely voluntary.
8. Beyond intangible benefits, such as good will and increased morale of the team members, "UL" realized no other advantages. "UL" did not hold a banquet for the players at the end of the season where speeches or awards were presented.
9. Although plaintiff sustained an injury by accident on or about December 17, 1995 when he sprained his ankle during a basketball game, the injury he sustained did not arise out of and in the course of his employment with defendant-employer "UL".
 ***********
Based on the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff's injury while playing basketball on December 17, 1995 did not arise out of and in the course of his employment with defendant-employer "UL". Chilton v. School of Medicine,45 N.C. App. 13, 262 S.E.2d 347 (1980).
2. Payment of plaintiff's medical bills by the defendants does not estop the defendants from denying plaintiff's claim.Abels v. Renfro Corp., 100 N.C. App. 186, 394 S.E.2d 658 (1990).
3. As defendants did not pay any compensation benefits to plaintiff, the provisions of North Carolina General Statute § 97-18(d) are not applicable.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 ORDER
1. Under the law, Plaintiff's claim must be and is hereby DENIED.
2. Defendants' motion to dismiss plaintiff's appeal is DENIED.
3. Each side shall pay its own costs.
This the ___ day of October 1998.
 S/ _______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
S/ _____________________ J. HOWARD BUNN JR., CHAIRMAN
S/ _____________________ DIANNE C. SELLERS COMMISSIONER